NO.
12-05-00383-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

PENNY GAIL FOX, §                      APPEAL
FROM THE 173RD

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      HENDERSON
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Appellant
Penny Gail Fox appeals her murder conviction for which she was sentenced to
fifty years of imprisonment.  In one
issue on appeal, Appellant challenges the trial court’s overruling of her
motion to suppress her recorded statement. 
We affirm.

 

Background 

            Appellant
lived in Payne Springs, Texas, with her husband, James Fox (Fox), her two
children, and her mother-in-law, Carolyn Sue Fox.  On the evening of November 20, 2004, Fox
called 9-1-1, and reported that he and Appellant had arrived home to find the
front door “cracked” and his mother lying dead on the floor.  She had been beaten to death.  A search of the house revealed a general “ransacking”
of the home, but nothing was missing.  An
investigation ensued.  Nine days later,
Fox confessed to beating his mother with a baseball bat, then staging the house
to make it appear as though someone had broken in and killed her.  In his confession, Fox implicated
Appellant.  








            After hearing
a portion of her husband’s confession implicating her in the murder, Appellant
made a recorded confession.  She was
subsequently arrested for murder and placed in the Henderson County jail.  Prior to her trial, Appellant made a motion
to suppress her taped confession.  The
trial court held a hearing on July 25, 2005 to consider her motion.

            At the hearing, Ray Nutt, an
investigator for the Henderson County Sheriff’s Department, testified that he
met with Appellant and her husband on November 20 following the reported murder
of Carolyn Fox.  On November 21 and 22,
he took statements from Appellant.  He
then asked if Appellant and Fox were willing to take polygraph examinations to
eliminate them from suspicion.  They
agreed to the examinations, and Nutt scheduled them for November 29.

            At 9:00 on the
morning of November 29, Appellant submitted to a polygraph examination. The
polygraph examiner told Nutt that Appellant’s polygraph showed some
deception.  Nutt gave  Appellant her Miranda[1]
warnings and told her that she had the right to terminate the interview at any
time.  He asked her if she understood her
rights and she said that she did.  Fox
then took his polygraph examination while Appellant sat in Nutt’s office.  During this time, Appellant made no
incriminating statements.  

            After Fox
finished his exam, the polygraph examiner called Nutt and told him that Fox had
also shown deception.  At that point,
Nutt left Appellant in his office with Lieutenant Kay Langford while he went to
speak with Fox.  Within minutes, Fox gave
a recorded statement, confessing to beating his mother, but also implicating
Appellant in the murder.  

            Nutt returned
to his office and told Appellant that Fox had implicated her in the murder.
Appellant did not believe him, so he played one sentence from Fox’s confession
where Fox could be heard blaming Appellant for the murder.  Appellant then “went to talking.”  Nutt stopped her and “tried to get her to
quieten and calm[] down.”  She complied
with Nutt’s request to stop talking and wait. 
Nutt then set up a tape recorder and recorded her Miranda warnings
and her ensuing statement.  In relevant
part, the transcript from Appellant’s statement was as follows: 

 

INV.
NUTT:          Now I’m gonna read you your
rights.  You have the right to remain
silent and not make any statement at all, and any statement you make may be
used against you at your trial.  You
understand that? 

 

APPELLANT:      Yes.

INV.
NUTT:          And I have read you your
rights once before today, haven’t I?

 

APPELLANT:      Yes.

 

INV.
NUTT:          Any statement you make may
be used as evidence against you in court. You understand that?

 

APPELLANT:      Yes.

 

INV.
NUTT:          You have the right to have
a lawyer present to advise you prior to and during any questions.  You understand that?

 

APPELLANT:      Yes.

 

INV.
NUTT:          If you’re unable to employ
a lawyer, you have the right to have a lawyer appointed to advise you prior to
and during any questions. You understand that?

 

APPELLANT:      Yes.

 

INV.
NUTT:          You understand that you can
terminate the interview at any time.

 

APPELLANT:      Yes.

 

INV.
NUTT:          Now after hearing those, do
you knowingly and intelligently and voluntarily waive your rights to remain
silent and your rights to an attorney and want to talk to us?

 

APPELLANT:      I don’t know.

 

INV.
NUTT:          I want to hear what you got
to say if that’s what you want to do.

 

APPELLANT:      Yes, Sir. 
What can it matter?

 

LT. LANGFORD:  We need to hear your side. 

 

APPELLANT:      He . . he taped up the bat. .

 

INV.
NUTT:          Okay, listen to me.  Do you waive your rights?

 

APPELLANT:      I don’t know.  I’m scared.

 

INV.
NUTT:          I understand you being
scared.

 

LT. LANGFORD:  Do you understand what [Investigator Nutt]
read to you about

   your rights?

 

APPELLANT:      Yes, I understand.

 

LT. LANGFORD:  Okay, do you want to talk to us?

 

APPELLANT:      Yes.

LT. LANGFORD:  What?

 

APPELLANT:      Yes.

 

 

Appellant said that they had discussed killing Carolyn Fox
before that day because she was “mean.” 
On November 20, Appellant sent her children to her mother’s house to
spend the night.  Appellant said that Fox
wrapped a baseball bat with plastic bags. 
Late that afternoon, as Carolyn was looking at a magazine with Fox at
the kitchen counter, Appellant approached her from behind and hit her in the
head with the bat.  At a point while
Carolyn Fox was still alive, Appellant said that emotionally, she could no
longer continue hitting her so she left the room.  Fox picked up the bat and continued to beat
his mother until she was dead.  After
Carolyn Fox was dead, Fox and Appellant dumped the bat in woods near their
home, went to Wal-Mart and purchased Motrin, went bowling, then drove back to
Wal-Mart and bought milk, cat food, and Dr. Pepper before returning to their
home to report the crime.  

            At the conclusion
of the hearing on the motion to suppress, the court found that Appellant

 

                        was not under any physical or mental impairment, nor
was she under any kind of undue physical stress, such as fatigue or hunger or
lack of sleep under these circumstances. 
The court finds that [Appellant] indicated that she understood the
rights that had been read to her, and that she indicated herself that she
wished to thereafter to give this statement. 
And so the court finds that the statement was knowingly and freely and voluntarily
and intelligently made, and complies in every respect with Article 38.22 of the
Code of Criminal Procedure.  And so the
motion to suppress is overruled. 

 

 

Appellant pleaded “guilty” at trial.  A jury heard evidence and argument at
punishment and assessed fifty years of imprisonment.  Appellant filed a motion for new trial, which
was overruled, and this appeal followed.

 

Suppression of
Recorded Confession

            In her sole
issue, Appellant contends that the trial court erred in overruling her motion
to suppress her recorded confession because she did not knowingly,
intelligently, and voluntarily waive her right to remain silent and her right
to counsel.

 

Standard of Review

            We review a
trial court's ruling on a motion to suppress for abuse of discretion.  See Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996). 
In reviewing the trial court’s ruling, we apply a bifurcated standard of
review.  See Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing Guzman v. State,
955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). 
We give almost total deference to the trial court’s determination of
historical facts, while conducting a de novo review of the trial court’s
application of the law to those facts.  See
Carmouche, 10 S.W.3d at 327. 
The trial court is the exclusive finder of fact in a motion to suppress
hearing, and as such, it may choose to believe or disbelieve any or all of any
witness’s testimony.  Romero v.
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  If the trial court’s fact findings are
supported by the record, the appellate court is not at liberty to disturb the
findings absent an abuse of discretion.  Cantu
v. State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).  The appellate court will address only the
question of whether the trial court properly applied the law to the facts.  Romero, 800 S.W.2d at 543.  Whether a confession is voluntary is a mixed
question of law and fact.  Garcia
v. State, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000).  Appellate courts should afford the same
amount of deference to trial court rulings on mixed questions of law and fact
when the resolution of those ultimate issues turns on an evaluation of credibility
and demeanor.  Guzman, 955
S.W.2d at 89.  However, an appellate
court may review de novo mixed questions of law and fact that do not fit within
that category.  Id.

Applicable Law and Discussion

            Appellant
argues that her statement was admitted into evidence in violation of Texas Code
of Criminal Procedure article 38.22, section 3, which states that no oral
statement of an accused made as a result of custodial interrogation shall be
admissible against the accused in a criminal proceeding unless, prior to the
statement but during the recording, the accused is given the warnings required
by law[2]
and the accused knowingly, intelligently, and voluntarily waives such
rights.  See Tex. Code Crim. Proc. Ann. art. 38.22, §
3(a)(2) (Vernon 2005).  In support of her
argument, Appellant points to the portion of her recorded confession where Nutt
asked her if she waived her rights. 
Appellant initially responded, “I don’t know.  I’m scared.”  


            An inquiry
into the waiver of Miranda rights has two distinct
dimensions.  First, the waiver  must be voluntary in the sense that it was
the product of free and deliberate choice rather than intimidation, coercion, or
deception.  Ripkowski v. State,
61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (citing Colorado v. Spring,
479 U.S. 564, 573, 107 S. Ct. 851, 857, 93 L. Ed. 2d 954 (1987)). Second, the
waiver must be made with a full awareness both of the nature of the right being
abandoned and the consequences of the decision to abandon it.  Id.  In determining voluntariness, we look to the
totality of the circumstances surrounding a statement’s acquisition.  Penry v. State, 903 S.W.2d 715,
744 (Tex. Crim. App. 1995).  

            Appellant does
not contend nor do we find any evidence that she was coerced or intimidated
into giving the statement at issue. 
Instead, she argues that due to her emotional state, she was not
completely aware of the consequences of waiving her Miranda
rights.  Consequently, we focus our
discussion on the second dimension of the inquiry.  

            The record
reflects that Appellant was crying and scared when Nutt asked her if she wanted
to waive her Miranda rights and speak to him concerning the
crime.  In her appellate brief, Appellant
seems to contend that she was mentally impaired due to her emotional
state.  It has been held that the
defective mental state of a defendant may be significant enough to render a
confession inadmissible.  Page v.
State, 614 S.W.2d 819, 819-20 (Tex. Crim. App. 1981); Casias v.
State, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970).  Likewise, the emotional confusion and
debilitation of a suspect may well call into question the voluntariness of the
confession.  See Mincey v.
Arizona, 437 U.S. 385, 396-402, 98 S. Ct. 2408, 2415-18, 57 L. Ed. 2d
290 (1978).  Essentially, the question is
whether the accused’s mental impairment is so severe that she was incapable of
understanding the meaning and effect of her statement.  See Casias, 452 S.W.2d at 488.

            After a
careful review of the record, we conclude that Appellant was upset and
frightened  after hearing Fox implicate
her and then facing her part in the murder. 
This alone, however, does not compel a finding that the statement was
involuntary.  Mere emotionalism and
confusion do not dictate a finding of mental incompetency, which would render a
confession involuntary.  Licon v.
State, 99 S.W.3d 918, 925 (Tex. App.–El Paso 2003, no pet.).  In all, no evidence was presented showing
that Appellant, in her “emotionally distraught” state, was incapable of
understanding her Miranda warnings or understanding the effect of
their waiver.

            Additionally,
Appellant suggests that her actions and words invoked her right to remain
silent and her right to counsel.  However,
the recorded interview reflects that after Appellant’s rights were explained to
her pursuant to article 38.22, section 2, she stated that she understood her
rights and that, ultimately, she wanted to speak to the investigators regarding
the matter.  Although she was admittedly
scared, Appellant expressly relinquished her rights by twice responding “yes”
to the lieutenant’s question, “Do you want to talk to us?”  Therefore, considering the totality of the
circumstances, we conclude that Appellant made a knowing, intelligent, and
voluntary waiver of her rights in accordance with article 38.22.  As such, we hold that the trial court did not
abuse its discretion in overruling Appellant’s motion to suppress.  We overrule Appellant’s issue.  

 

Disposition

            Having overruled Appellant’s sole
issue, we affirm the judgment of the trial court.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

Opinion delivered August 16, 2006.

Panel
consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)











[1] Miranda v.
Arizona, 384 U.S. 436, 86 S. Ct.
1602, 16 L. Ed. 2d 694 (1966).





[2] See Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon 2005).